IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSE FRANCISCO JAVIER ARRIOLA-
CABALLERO, a Resident of Washington;
and MA GUADALUPE MENDOZA-RUIZ,
a Resident of Washington,

No. 3:24-cv-02008-AB

                Plaintiffs,

OPINION AND ORDER

    v.

VERMEER MANUFACTURING
COMPANY, a Foreign Corporation; RDO
EQUIPMENT CO., A CORPORATION OF
DELAWARE, a Foreign Corporation;
PETER L. RICHARDS, a Resident of
Oregon; and BETTE J. M. RICHARDS, a
Resident of Oregon,

                Defendants.

**BAGGIO, District Judge:**

This matter comes before the Court on Plaintiffs' Motion to Remand ("Mot."), ECF 13.

The Court DENIES Plaintiffs' Motion to Remand for the reasons explained below.

## BACKGROUND

Plaintiffs are Washington residents Jose Francisco Javier Arriola-Caballero and Ma

Guadalupe Mendoza-Ruiz. First Amended Complaint ("FAC") ¶ 1, ECF 2-1. Defendants are

Vermeer Manufacturing Company, an Iowa corporation with its principal place of business in

Iowa; RDO Equipment Co., a Delaware corporation with its principal place of business in North

Dakota; and Oregon residents Peter L. Richards and Bette J. M. Richards (the "Richards Defendants"). *Id.*

Plaintiff Arriola-Caballero was employed at a landscaping company called Inexpensive Tree Care ("ITC"). *Id.* ¶ 5. On October 18, 2022, he was working at the home of the Richards Defendants at the direction of his employer ITC. *Id.* He was directed to use a Vermeer Mini Skid Steer with a "log grapple attachment" to load wood from a fallen tree onto a truck. *Id.* While doing so, Plaintiffs allege the attachment lodged and then swung back unpredictably, hitting Plaintiff Arriola-Caballero so hard he lost consciousness. *Id.* ¶ 6. Nobody witnessed the incident directly, but one of his coworkers found him unconscious. *Id.* ¶ 7. Paramedics were called and they transported him to Legacy Emanuel Medical Center Neurotrauma Intensive Care Unit. *Id.* ¶ 8. He was hospitalized until October 25, 2022, and in rehabilitation until November 1, 2022. *Id.* By the time of the accident, he had been employed by ITC for 25 years and regularly used the Mini Ski Steer for his work duties. *Id.* ¶ 6. Plaintiffs allege the Mini Ski Steer attachment was defective because of its design, which made it unsafe for its intended use. *Id.* ¶ 9. Plaintiffs bring six counts against the Richards Defendants as homeowners of the property where he was injured: Common-Law Negligence; Employers' Liability Law, Not Based on Safety Codes; Employers' Liability Law, Based on Safety Codes; Negligence Per Se; Oregon Safe Employment Act; Premises Liability; and Loss of Consortium. *Id.* ¶¶ 26-53.

On December 2, 2024, Defendant Vermeer removed this case from state court. Notice of Removal ("Notice"), ECF 1. Removal was timely and all Defendants consented to removal. *Id.* at 3. Defendant Vermeer argues complete diversity exists even though the Richards Defendants are Oregon residents because "Plaintiffs' claims against the Richards Defendants are not supported by Oregon law," so they have been fraudulently joined. *Id.* at 4. Plaintiffs filed a motion to remand

the case back to state court on December 13, 2024, arguing that the Richards Defendants have not

been fraudulently joined and they are residents of Oregon, so complete diversity does not exist.

Mot. at 3-4, ECF 13.  Defendant Vermeer responded on January 14, 2025, opposing the motion to

remand.  Opposition ("Opp."), ECF 14.  Plaintiffs replied in support of their motion on January

28, 2025.  Reply, ECF 22.

## LEGAL STANDARD

Complete diversity of citizenship among the parties is required for removal to federal court.

28 U.S.C. § 1332(a).  One "exception to the requirement for complete diversity is where a non-

diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039,

1043 (9th Cir. 2009) (internal quotations omitted).  If a party is found to be fraudulently joined,

"its presence as a resident defendant is ignored for removal purposes."  *In re Girardi*, 611 F.3d

1027, 1049 (9th Cir. 2010).  "There are two ways to establish fraudulent joinder: '(1) actual fraud

in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action

against the non-diverse party in state court.'"  *GranCare, LLC v. Thrower by & through Mills*, 889

F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter*, 582 F.3d at 1044).  "Fraudulent joinder is

established the second way if a defendant shows that" the allegedly fraudulently joined party

"cannot be liable on any theory."  *Id.*  "But 'if there is a possibility that a state court would find

that the complaint states a cause of action against any of the resident defendants, the federal court

must find that the joinder was proper and remand the case to the state court.'"  *Id.* (quoting *Hunter*,

582 F.3d at 1046).

There is a "strong presumption" against removal jurisdiction, so the "defendant always has

the burden of establishing that removal is proper, and. . . the court resolves all ambiguity in favor

of remand to state court." *Hunter*, 582 F.3d at 1042 (internal quotations omitted).  A defendant

"invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden.'" *GranCare*, 889 F.3d at 548. The Ninth Circuit has clarified the fraudulent joinder analysis is distinct from and more stringent than the analysis under Rule 12(b)(6) for failure to state a claim. *Id.* at 550. The two standards are related in that if a claim can survive Rule 12(b)(6), then it can survive a fraudulent joinder attack, but the reverse is not true because a claim can pass the fraudulent joinder test yet fail under Rule 12(b)(6). *Id.*

To properly analyze fraudulent joinder claims, the Ninth Circuit has endorsed "piercing" the pleadings to allow district courts to consider "summary judgment-type evidence such as affidavits and deposition testimony." *Morris*, 236 F.3d at 1068; *see Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (endorsing approach of going "further" than the pleadings to "look at facts outside of the complaint" in cases of fraudulent joinder).

## DISCUSSION

The Court concludes that Plaintiffs do not have a viable claim against the Richards Defendants because as homeowners who relied on the expertise of ITC, they are categorically exempt from liability on all of Plaintiffs' counts against them. Accordingly, there is no "possibility that a state court would find that the complaint states a cause of action against" the Richards Defendants, so they have been fraudulently joined. *GranCare*, 889 F.3d at 548.

### A.  Count One[1]: Common Law Negligence

Plaintiffs allege the Richards Defendants "were generally negligent in failing to ensure that the work performed by Inexpensive Tree Care, including the removal of a felled tree using a Mini Skid Steer, was in compliance with applicable Oregon Occupational Safety and Health Administration ('OR-OSHA') rules."  FAC ¶ 27, ECF 2-1.  Despite invoking OR-OSHA in their complaint, Plaintiffs argue this claim is based on broad principles of common law negligence claims.  *See* Mot. at 12-13, ECF 13.  Defendant Vermeer argues that the Richards Defendants are not bound by OR-OSHA because they were not Plaintiff Arriola-Caballero's employer and OR-OSHA does not impose a duty on homeowners to ensure their hired contractors comply with state safety laws.  Notice at 5-6, ECF 1.  Defendant Vermeer also argues that general negligence rules would not apply here because "Oregon courts have developed special negligence rules addressing the relationship between a property owner and personnel performing paid work on their property," which allowed the Richards Defendants to rely on ITC's and Plaintiff Arriola-Caballero's expertise in tree care and their knowledge of the associated hazards.  Opp. at 4, ECF 14.

The Court agrees with Defendant Vermeer that a special relationship applies.  In Oregon, a homeowner-defendant "cannot be liable for an injury to the plaintiff" resulting from a risk associated with the plaintiff's contracted work if three factors are met:

> (1) when a risk is obvious and "inextricably intertwined with [the plaintiff's employer's] performance of a specialized task"; (2) the defendant lacks expertise regarding and control over the specialized task and, consequently, the risk; and (3) the defendant hired the plaintiff's employer because of its expertise in that work[.]

---

[1] Plaintiffs' FAC is organized into three "Claims for Relief" with counts underneath each of the first two claims.  ECF 2-1.  The Second Claim for Relief is against the Richards Defendants and contains five "counts" which seem to be distinct claims.  *Id.* ¶¶ 26-53.

*Spain v. Jones*, 257 Or. App. 777, 787 (2013) (quoting *George v. Myers*, 169 Or. App. 472, 487-88 (2000)).

Starting with the first factor, Oregon courts look to the nature of the work a plaintiff was hired to perform to determine whether the risks of the injury experienced were "inherent in the plaintiff's work"—such as, "a roofer's risk of falling off a roof." *Spain*, 257 Or. App. at 786. Plaintiff Arriola-Caballero alleges he had "approximately twenty-five (25) years of experience working as an arborist for Inexpensive Tree Care and regularly operated the Mini Skid Steer to perform his job duties." FAC ¶ 6, ECF 2-1. Accordingly, the Court concludes that use of the Mini Steer Skid and its attendant risks were inherent in Plaintiff Arriola-Caballero's job as an arborist for ITC.

As to the next two factors, Plaintiffs allege the Richards Defendants "contracted with Inexpensive Tree Care to remove a felled tree from their residence." *Id.* ¶ 32. Vermeer's Opposition attaches declarations from the Richards Defendants in which they attest they hired ITC to remove from their property four large trees that each ranged from 70 to 190 feet; neither of them have experience in tree removal; they believed ITC to be skilled in tree removal; and neither instructed, directed, or provided equipment to ITC or its employees when they arrived at the Richards Defendants' home. *See* Opp., ECF 14; P. Richards Decl. ¶¶ 2-8, ECF 15; B. Richards Decl. ¶¶ 2-8, ECF 16. The Court may consider these declarations in determining whether joinder was fraudulent. *See Morris*, 236 F.3d at 1068. Based on these declarations, the Court finds that the Richards Defendants lacked the requisite expertise to remove large trees from their property and hired ITC for its expertise in this field.

The Court concludes the three-part test in *Spain* is met. Because under Oregon law, the Richards Defendants were entitled to rely on ITC's specialized expertise in tree removal, Plaintiffs

do not have a viable common law negligence claim, based on OR-OSHA or otherwise, against the Richards Defendants.

### B. Counts Two and Three: Employers' Liability Law

Plaintiffs allege the Richards Defendants are liable under the Employers' Liability Law ("ELL") (ORS 654.305–654.336) for two counts—one count not based on safety codes (Count two) and one count based on safety codes (Count Three). FAC ¶¶ 29-41, ECF 2-1. Plaintiffs allege the ELL applies to the Richards Defendants because they were "owners," or in the alternative, "indirect employers in charge of and responsible for work that involved risk or danger to plaintiff Jose Francisco Javier Arriola-Caballero." *Id*. ¶¶ 31-32.

In response, Defendant Vermeer argues the ELL does not apply to the Richards Defendants for four independent reasons: "(1) the Richards did not 'hav[e] charge of, or responsibility for, any work involving a risk or danger to the employees or the employers or the public,' ORS 654.305, (2) the Richards are not 'employers,' (3) the Richards are not indirect employers, and (4) the Richards are not 'owners'" because they lack control over the work that was done on their property. Opp. at 8-9, ECF 14.

Oregon's ELL imposes liability on "'all owners, contractors or subcontractors and other persons having charge of, or responsibility for' work involving a risk or danger." *Yeatts Whitman v. Polygon Nw. Co*., 360 Or. 170, 179 (2016) (quoting ORS 654.305). To be liable under ELL, the Richards Defendants must fall into one of these categories.

First, it is undisputed that the Richards Defendants were not Plaintiff Arriola-Caballero's direct employers. FAC ¶ 2, ECF 2-1; Notice at 5, ECF 1; Mot. at 4, ECF 13. Second, the Court finds the Richards Defendants are also not "owners" as defined in the ELL. The ELL defines "owner" as "every person having ownership, control or custody of any place of employment or of

the construction, repair or maintenance of any place of employment." ORS 654.005(6). The statutory definition of "place of employment" explicitly excludes, any "place where the only employment involves nonsubject workers employed in or about a private home[.]" ORS 654.005(8)(b). A nonsubject worker is defined, in part, as a "worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker." ORS 656.027(2). It is undisputed Plaintiff Arriola-Caballero was employed by ITC to do yard work at the Richards' home at the time of his accident. FAC ¶ 5, ECF 2-1, Notice at 7, ECF 1. Accordingly, the Court finds that he meets the definition of "nonsubject worker," and the Richards Defendants are not owners for purposes of the ELL because their private home does not meet the statutory definition of "place of employment" in ORS 654.005.

Third, the Richards Defendants are not "indirect owners" under Oregon case law. The Oregon Supreme Court has a test to determine whether a defendant can be classified as an "indirect employer" under the ELL:

> in addition to a worker's direct employer, liability under the ELL can be imposed on an indirect employer who (1) is engaged with the plaintiff's direct employer in a 'common enterprise'; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk[-]producing activity is performed."

*Yeatts Whitman*, 360 Or. at 179 (quoting ORS 654.305). The first prong requires "more than a common interest in the economic benefit of the enterprise" and an "intermingling of duties and responsibility." *Id.* at 180. It is undisputed the Richards Defendants hired ITC for the discrete task of removing trees from their property. FAC ¶ 32(a), ECF 2-1; Notice at 5, ECF 1. Because they had no common economic interest and certainly no "intermingling of duties" with ITC, they fail the first prong of the *Yeatts* indirect employer test. *See id.*

As to the second prong, the "risk-producing activity" here can be characterized as moving fallen trees from the land. *Cf. Yeatts Whitman*, 360 Or. at 179 (risk producing activity identified as "plaintiff's framing work at a dangerous height above a concrete surface"). The Richards Defendants "retained control pertained solely to the *scope* of the work,"—removing the trees from their land—and not the "the method and manner of" ITC's "performance and, particularly, the 'risk-producing activity'" of removing trees. George, 169 Or. App. at 477. The parties have cited no Oregon cases that find a homeowner—who is not also the general contractor or builder on a project—can be classified as an "indirect employer" simply because they retain the right to control the overall scope of work of the contractors. While Plaintiffs label the Richards Defendants as "general contractors" in portions of their complaint, this label contradicts their own factual allegations that the Richards Defendants hired ITC to oversee the removal of trees. As such, the Court need not accept Plaintiffs' label as true. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) ("the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

The Richards Defendants attest in their declarations, and Plaintiffs do not dispute, that neither of the Richards Defendants engaged in "active, on-site participation," of ITC's tree removal work. *See* P. Richards Decl., ECF 15; B. Richards Decl., ECF 16. Thus, the Court concludes the Richards Defendants fail the third and final prong of the *Yeatts* test of "actual control," and therefore they cannot be considered "indirect employers" under the ELL. In sum, Plaintiffs do not have viable claims under Counts Two or Three because the Richards Defendants do not meet the statutory definitions for any of the groups on which the ELL imposes liability.

### C.  Count Four: Negligence Per Se; Oregon Safe Employment Act ("OSEA")

Plaintiffs allege the Richards Defendants are liable under this count because their home was a "place of employment" as defined in ORS 654.005(8), so it falls under the purview of the OSEA.  FAC ¶ 44, ECF 2-1.  Plaintiffs also re-allege the Richard Defendants are owners under ORS 654-005(6) and allege for the first time that that they were "employers, as that term is defined in ORS 654.005(5), in that it had one or more employees."  *Id.* ¶¶ 45-46.  Elsewhere in the FAC, Plaintiffs repeatedly allege that ITC was Plaintiff Arriola-Caballero's employer and that he had worked for ITC for 25 years.  *See, e.g.*, FAC ¶¶ 5-6, ECF 2-1.  Only in Count Four do Plaintiffs switch to alleging the "Richards defendants were the employers in charge of and responsible for, work involving risk or danger to plaintiff Arriola-Caballero."  *Id.* ¶ 43.  Plaintiffs seem to walk this back in their Motion to Remand: "plaintiffs do not allege, nor do they intend to allege, that the Richards Defendants were ever Mr. Arriola-Caballero's direct employer."  Mot. at 13, ECF 13.  Based on this admission, the inconsistency in the FAC, and the lack of factual support for the legal conclusion that the Richards Defendants qualify as "employers" in this statutory context, the Court will not accept the allegation that the Richards Defendants were Plaintiff Arriola-Caballero's employer as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

For the reasons discussed above and in Section B., *supra*, the Richards Defendants' home does not meet the statutory definition of "place of employment" in ORS 654.005(8).  Because of this, the Richards Defendants cannot as a matter of law meet the definitions of "owners" or "employers" who are bound by the OSEA, and Plaintiffs' Count Four is not viable.

**D. Count Five: Premises Liability**

Under Count Five, Plaintiffs allege that as homeowners, the "Richard [sic] defendants owed a duty of reasonable care to business invitees in general, and plaintiff Arriola-Caballero in particular." FAC ¶ 52, ECF 2-1. Plaintiffs allege the Richards Defendants breached this duty in seven specific ways, all relating to a general failure to ensure ITC and its equipment were reasonably safe. *Id.* Defendant Vermeer responds that even if Plaintiff was an invitee on the Richards Defendants' land, the "greatest duty the Richards could have owed to Plaintiff was to warn of latent dangers to protect him 'against dangers in the condition of the premises' that they knew or reasonably should have known." Notice at 12, ECF 1 (citing *Walsh v. C&K Mkt., Inc*., 171 Or. App. 536 539 (2000)). Because Plaintiffs do not allege that Plaintiff was harmed due to a defect on the Richards Defendants' land, Defendant Vermeer argues that this premises liability claim is not viable. *Id.* at 12-13. It adds that Oregon's *Yowell* doctrine further shields the Richards Defendants from liability because of the specialized nature of the work that the Richards Defendants hired ITC to complete. *Id.* at 13 (citing *Yowell v. Gen. Tire & Rubber Co*., 260 Or. 319, 325 (1971)). *Yowell* provides that:

> A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses.

260 Or. at 325. The Court agrees with Defendant Vermeer that the Richards Defendants did not have a duty to "discover and warn of any unknown dangerous conditions surrounding the work" of large tree removal because that work and the related use of the Mini Steer Ski fell within the "special expertise or knowledge" of tree removal for which ITC was hired. Accordingly, Plaintiffs do not have a viable premises liability claim against the Richards Defendants.

### E.  Count Six: Loss of Consortium – Loss of Services

Plaintiff Ma Guadalupe Mendoza-Ruiz includes the Richards Defendants in her claim for loss of consortium based on the other claims of liability against the Defendants.  FAC ¶ 56, ECF 2-1.  Defendant Vermeer argues that this sixth claim necessarily fails against the Richards Defendants because the others do.  Notice at 13, ECF 1.  Plaintiffs do not directly respond to this argument in their Motion or Reply.  Plaintiff Mendoza-Ruiz's claim relies on the alleged "strict liability, negligence, and/or fault of defendants, and each of them, in one or more of the particulars set forth" in the first two claims for relief."  FAC ¶ 56, ECF 2-1.  The Court agrees this claim is not viable because it requires at least one other viable claim of liability against the Richards Defendants, and the Court concludes that the First Amended Complaint states no viable claims of liability against the Richards Defendants.

**CONCLUSION**

For the reasons above, the Court concludes Defendant Vermeer has met its heavy burden and shown there is no "possibility that a state court would find that the complaint states a cause of action against any of the resident defendants." *GranCare,* 889 F.3d at 548. Accordingly, the Court concludes they have been fraudulently joined and their citizenship will be ignored for purposes of diversity jurisdiction. The Court DENIES Plaintiff's Motion to Remand, ECF 13. Based on the above findings, the Court has concluded Plaintiffs have not stated any claims against the Richards Defendants. Accordingly, the Court DISMISSES sua sponte Plaintiffs' claims against the Richards Defendants without prejudice. *See, e.g., Warweg v. Lawson*, 658 F. Supp. 3d 879, 883 (D. Nev. 2022).

IT IS SO ORDERED.

DATED this ⎯10th⎯ day of March, 2025.

*Amy M. Baggio*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
AMY M. BAGGIO
United States District Judge